IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 15, 2011 Session

## TOYMEKA QUAITES v. UNIVERSITY OF TENNESSEE COLLEGE OF PHARMACY

**Direct Appeal from the Chancery Court for Davidson County**
**No. 10-572-II      Carol L. McCoy, Chancellor**

---

**No. M2011-00923-COA-R3-CV - Filed January 19, 2012**

---

This is an appeal from an administrative decision dismissing a student from the University of Tennessee College of Pharmacy. After a hearing, the Administrative Law Judge concluded that the student had violated the Honor Code of the University of Tennessee College of Pharmacy by giving or receiving aid during an exam. The Administrative Law Judge recommended dismissal, which was affirmed by the school's Interim Chancellor. The student filed a petition for administrative review, which was not signed by her counsel. The chancellor concluded that, because the amended petition was filed outside the sixty day time limit set out in Tennessee Code Annotated Section 4-5-322, the chancery court did not have jurisdiction to hear the appeal. The student appeals. Because the student's brief does not comply with the requirements of the Tennessee Rules of Appellate Procedure, we decline to address the merits of the case and dismiss the appeal.

**Tenn. R. App. P. 3. Appeal as of Right; Appeal is Dismissed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Travis Edgar Davison, III, Cordova, Tennessee, for the appellant, Toymeka Quaites.

Devon L. Gosnell, Memphis, Tennessee, for the appellee, University of Tennessee College of Pharmacy.

### OPINION

### I. Background

Plaintiff/Appellant Toymeka Quaites was a student at the Defendant/Appellee

University of Tennessee College of Pharmacy ("UT") from August 2007 until the incident occurred that resulted in this action. The conduct of UT students is governed by an honor code that is distributed to students at orientation. The Honor Code provides, in relevant part, that:

> A. It is a violation of the Honor Code for a student to:
>
> 1. Use, give, or receive any unauthorized aid during any test or examination, in the preparation of oral, written or practical reports, or in clinical or laboratory work that are a part of a student's academic program.

Ms. Quaites signed the Honor Code on August 17, 2007, indicating that she read, understood and agreed to abide by the Honor Code. However, due to an alleged violation of the Honor Code, Ms. Quaites was dismissed from UT on December 12, 2008. The incident that resulted in her expulsion is as follows.

Ms. Quaites and fellow student Amber Pettis were frequent study partners and both were enrolled in Dr. Joanna Hudson's Therapeutics II course in the fall of 2008. Dr. Hudson has been a professor with UT since 1998. The syllabus for Dr. Hudson's Therapeutics II course stated that:

> Academic dishonesty at any point during the course may result in course letter grade of "F" and/or other disciplinary actions as determined by the course director. The honor code applies to all examinations. Each student is expected to work alone on examinations unless otherwise instructed.

The final examination in Dr. Hudson's course was given on December 10, 2008. Both Ms. Quaites and Ms. Pettis admit to studying together for this exam, which is not in violation of the Honor Code. During the exam, Dr. Hudson placed students in two different classrooms and required that each student sit one or two seats away from any other student. Ms. Quaites and Ms. Pettis sat next to each other, but with the required one or two seats between them. Another student, Rebecca Regan sat two rows behind Ms. Quaites and Ms. Pettis.

During the exam, Ms. Regan noticed that Ms. Quaites and Ms. Pettis appeared to be communicating with one another; however, Ms. Regan was unable to hear the conversation. Ms. Regan also noticed that Ms. Quaites was, as she later described, "flipping her exam unusually slow as if maybe to let somebody to look off of it." Because she was obligated to report any violations of the Honor Code as a student member of the UT honor council, Ms. Regan notified both the proctor of the exam and Dr. Hudson of her suspicions. The next day Ms. Regan turned in an Honor Code violation form alleging that Ms. Quaites had allowed

Ms. Pettis to look at her exam.

After learning of the allegations, Dr. Hudson retrieved both Ms. Quaites' and Ms. Pettis' Therapeutics II final exams. Dr. Hudson had used two different exams to deter cheating; although the exams contained the same questions, the order of questions was different in the two exams. Ms. Quaites and Ms. Pettis had different exams. Hand-written next to question number five on Ms. Pettis' exam was the number "43." Question number forty-three on Ms. Quaites' exam was identical to question number five on Ms. Pettis' exam. Two other questions were marked similarly. According to Dr. Hudson, there was "absolutely no way that anyone should know what the corresponding question number would be on another version of the exam unless they viewed that exam." Dr. Hudson then obtained the prior examinations of both Ms. Quaites and Ms. Pettis in Therapeutics II; Ms. Quiates and Ms. Pettis had differently numbered exams on the prior examinations and Ms. Pettis' exam had a similar notation on at least one question.

Dr. Hudson used the computer grading system to grade both Ms. Quaites' and Ms. Pettis' exams. Ms. Pettis missed four questions and Ms. Quaites missed five; however, the two students missed three of the same questions. Dr. Hudson later testified that she considered this suspicious on an exam with seventy-five total questions. Dr. Hudson also noted that both Ms. Pettis and Ms. Quaites chose the same wrong answer on two of the three questions that had been marked with the corresponding test number.

UT sent a notice of charges to Ms. Quaites[1] on December 12, 2008. The notice stated, in pertinent part:

> Based on information presented to the Honor Council of the University of Tennessee College of Pharmacy, you are hereby charged with the following violations of the Honor Code of the University of Tennessee Health Science Center. Specifically, it is reported that you used or received unauthorized aid on your Therapeutics 2 Final exam, which is a violation of Article III, Section A.1.
>
> Should you be found guilty of the above charges and a violation of the Honor Code, disciplinary action, including Probation, Suspension or Dismissal, or any other action deemed necessary by the Dean of College of Pharmacy and warranted by the seriousness of the offense, may be taken

---

[1] Although Ms. Quaites and Ms. Pettis were essentially tried together for their alleged violations of the Honor Code, Ms. Pettis did not appeal the decision of the administrative law judge dismissing her from UT. Therefore, this opinion will only concern the proceedings as they applied to Ms. Quaites.

against you. . . .

> Should you wish to contest the above charges, you have a right to a hearing either in accordance with the provisions of the Honor Code (a hearing before the Honor Council of the College of Pharmacy or the University Honor Court) or the Tennessee Uniform Administrative Procedures Act, Tennessee Code Annotated §4-5-101, *et. seq*. Should you desire a hearing for purposes of contesting the charges, you must notify me within five (5) days of your receipt of this Notice. . . . A hearing will be held under the provisions of the Uniform Administrative Procedures Act in the absence of a voluntary written waiver . . . of your right to a hearing under the Act.

Ms. Quaites never requested a more definite and detailed statement of the charges.

Ms. Quaites requested a hearing pursuant to the Tennessee Uniform Administrative Procedures Act, which was held on August 26, 2009. Ms. Quaites was represented by a team of two attorneys during the administrative proceedings.[2] Dr. Hudson, Ms. Regan, Ms. Quaites, and Ms. Pettis all testified during the hearing. Specifically, Ms. Quaites and Ms. Pettis denied that they were cheating during the exam and stated that the only communication between the two of them during the exam was to borrow an eraser. Ms. Quaites and Ms. Pettis also questioned whether Ms. Regan would have been able to properly see their papers from her seat two rows back. Ms. Quaites further stated that the proctor, who was observing the examination room throughout the exam, never questioned the women regarding any suspicious activity. While Ms. Quaites admitted that all marks on her exam were her own, Ms. Pettis denied that she wrote the numbers on her exam corresponding to the other exam.

In addition to admitting into evidence the UT Honor Code and both Ms. Quaites' and Ms. Pettis' Therapeutics II mid-term and final exams, the administrative law judge ("ALJ") admitted photographs taken from the room where the Therapeutics II exam was administered. These photos purport to show Ms. Regan's vantage point from her seat and the approximate distance between Ms. Quaites and Ms. Pettis during the exam.

The ALJ filed her findings of fact and conclusions of law on December 14, 2009. The ALJ concluded that the notice of charges accusing Ms. Quaites of a violation of Article III, Section A.1 of the UT Honor Code was sufficient to put Ms. Quaites on notice that she was charged with giving or receiving aid in violation of the Honor Code. The ALJ further

---

[2] Ms. Quiates obtained a new attorney when she filed her petition for judicial review in chancery court, who represented her throughout those proceedings and on the instant appeal.

-4-

concluded that the evidence supported a finding that Ms. Quaites gave, used, and received aid during the Therapeutics II exam in violation of Article III, Section A.1 of the UT Honor Code. The ALJ further recommended that the proper remedy for the violation was dismissal from UT.

On January 7, 2010, the Vice Chancellor for Academic, Faulty and Student Affairs of UT affirmed the recommendation of dismissal from the ALJ and notified Ms. Quaites of her dismissal from UT. This letter informed Ms. Quaites of her right to appeal to chancery court. The Interim Chancellor of the UT Health Sciences Center, Steve J. Schwab, M.D., also affirmed the decision to dismiss Ms. Quaites on February 3, 2010.

On April 1, 2010, Ms. Quaites' filed a Petition for Writ of Judicial Review to the chancery court pursuant to Tennessee Code Annotated Section 4-5-322.[3] The document was not signed by Ms. Quaites' counsel. In the petition, Ms. Quaites' alleged that the ALJ arbitrarily adopted all of the findings of fact and conclusions of law submitted by UT, the ALJ failed to consider a lesser punishment than dismissal, and that the Interim Chancellor's action in affirming the recommendations of the ALJ was contrary to constitutional and statutory law, based on unlawful procedure, arbitrary and capricious, and unsupported by the evidence. Ms. Quaites further argued that notice of charges only accused her of having "used or received" aid, rather than having given aid.

After UT filed the administrative record with the chancery court, on August 19, 2010, Ms. Quaites submitted an amended Petition for Writ of Judicial Review, alleging more specific allegations as to how the affirmation by the Interim Chancellor violated the procedural requirements of Tennessee Code Annotated Sections 4-5-301 to 325, as well as the UT student handbook. In addition, the petition alleged that the ALJ was employed by UT as the Assistant Vice Chancellor for Planned Giving, and as such, was not an impartial

---

[3] Tennessee Code Annotated Section 4-5-322 provides, in pertinent part:

(a)(1) A person who is aggrieved by a final decision in a contested case is entitled to judicial review under this chapter, which shall be the only available method of judicial review. A preliminary, procedural or intermediate agency action or ruling is immediately reviewable if review of the final agency decision would not provide an adequate remedy.

* * *

(b)(1)(A) Proceedings for review are instituted by filing a petition for review in the chancery court of Davidson County, unless another court is specified by statute. Such petition shall be filed within sixty (60) days after the entry of the agency's final order thereon.

hearing officer. The petition further alleged that affirmation by the Interim Chancellor was in error because only the Dean of the College has authority to determine sanctions for violations of the UT Honor Code. The amended complaint was signed by Ms. Quaites' counsel.

On the same day, Ms. Quaites gave notice of filing additional parts of the record before the ALJ, including both parties' proposed findings of fact and conclusions of law before the ALJ, the final decision of the Interim Chancellor, and portions of the student handbook. The document submitted to chancery court as Ms. Quaites' proposed findings of fact and conclusions of law to the ALJ was not signed by her counsel and had no citation to the record from the administrative hearing.

On October 1, 2010, Ms. Quaites submitted a brief in support of her petition for judicial review, specifically concerning the issues of the sufficiency of the notice of charges, whether the ALJ was an impartial hearing officer, and whether the ALJ had the authority to punish Ms. Quaites for violations of the Honor Code. Because UT did not object to the filing of the brief, the chancellor granted leave to file the brief on October 12, 2010. On November 2, 2010, UT filed a motion to present additional evidence. The evidence sought to be admitted was an affidavit from the Dean of the College of Health Sciences showing that he was aware of the decision made concerning Ms. Quaites and that he concurred in the decision of the ALJ to dismiss Ms. Quaites and would have affirmed that decision if the matter had been referred to him. UT also submitted its own brief denying that the hearing before the ALJ and the decision to dismiss Ms. Quaites was in any way improper. Ms. Quaites submitted a reply brief on November 10, 2010.

No hearing was held in chancery court. The chancellor entered a memorandum and order on March 8, 2011 affirming the dismissal of Ms. Quaites from UT. The chancellor specifically held that Ms. Quaites received sufficient notice that she was being charged with giving, receiving, and using unauthorized aid in violation of the Honor Code. The chancellor further held that because Tennessee law authorizes the appointment of an employee of the University of Tennessee to act as a hearing officer in contested cases under the Uniform Administrative Proceedings Act,[4] the mere allegation that the ALJ was an employee of UT would not be a ground for recusal. The chancellor further found that Ms. Quaites' argument that the ALJ was biased by her employment could have been asserted when the ALJ was appointed; having not challenged the appointment at that time, any later challenge was

---

[4] Tennessee Code Annotated Section 49-9-110 provides that "[t]he campuses, institutes and other units of the University of Tennessee are authorized to appoint administrative judges and hearing officers from among their employees to conduct contested cases under the Uniform Administrative Procedures Act."

waived.[5] The chancellor also noted that Ms. Quaites chose to pursue an administrative hearing rather than a hearing before the UT honor council. As such, the ALJ had the authority to impose a penalty under Tennessee Code Annotated Section 4-5-314.[6] Further the chancellor held that any procedural errors that did not affect the merits of the case would not entitle Ms. Quaites to a reversal.[7] In the last portion of the chancellor's analysis section, titled "Dispositive Issue," the chancellor found that Ms. Quaites' original petition for judicial review did not comply with Rule 11 of the Rules of Civil Procedure[8] in that the petition was not signed by Ms. Quaites counsel. The court stated:

> The original pleadings, filed on April 1, 2010, are not signed. On August 19, 2010, Ms. Quaites' [sic] filed a First Amended Petition for Writ of Judicial Review, which was signed by her attorney. However, the final administrative decision in this matter occurred on February 3, 2010, when Interim Chancellor Steve J. Schwab, M.D. affirmed the ALJ's decision. Thus the amended

---

[5] Tennessee Code Annotated Section 4-5-302(b) provides that "[a]ny party may petition for the disqualification of an administrative judge, hearing officer or agency member promptly after receipt of notice indicating that the individual will serve or, if later, promptly upon discovering facts establishing grounds for disqualification." UT sent a notice to Ms. Quaites on May 12, 2009, notifying Ms. Quaites that UT had appointed Bethany Goolsby to serve as the hearing officer in that case, and informing Ms. Quaites that Ms. Goolsby served as the Vice Chancellor of Planned Giving for UT. Nothing in the record suggests that Ms. Quaites objected to the appointment after receiving this notice. From our review of the record, the first objection to the hearing officer was made in chancery court.

[6] Tennessee Code Annotated Section 4-5-314 states, in pertinent part:

(a) An agency with statutory authority to decide a contested case shall render a final order.
(b) If an administrative judge or hearing officer hears a case alone under § 4-5-301(a)(2), the administrative judge or hearing officer shall render an initial order, which shall become a final order unless reviewed in accordance with § 4-5-315.
(c) A final order, initial order or decision under § 50-7-304 shall include conclusions of law, the policy reasons therefor, and findings of fact for all aspects of the order, *including the remedy prescribed* and, if applicable, the action taken on a petition for stay of effectiveness.
. . .

(emphasis added)

[7] Tennessee Code Annotated Section 4-5-322(i) provides that "[n]o agency decision pursuant to a hearing in a contested case shall be reversed, remanded or modified by the reviewing court unless for errors that affect the merits of such decision."

[8] Tennessee Rule of Civil Procedure 11.01 provides that "[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party."

petition was not timely filed and cannot be considered by the Court.

(footnotes omitted).[9] The chancellor then concluded that while substantial and material evidence in the record supported the ALJ's decision to dismiss Ms. Quaites for violating the UT Honor Code, "as the petition in this case was untimely filed, the Court never obtained jurisdiction over the matter. Thus the final administrative decision stands."[10] Ms. Quaites appeals.

## II. Analysis

On appeal, Ms. Quaites asks this Court to reverse the chancellor's decision affirming Ms. Quaites' dismissal and remand for a new administrative hearing. However, as explained below, we conclude that Ms. Quaites' appellate brief has such serious deficiencies that the Court is unable to reach the merits of Ms. Quaites' appeal.

Tennessee Rule of Appellate Procedure 27 provides, in pertinent part:

(a) Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

---

[9] In a footnote, the chancellor explained that in addition to not signing the petition, a later brief filed by Ms. Quaites contains a certificate of service signed by Ms. Quaites' attorney. Other than the certificate of service, the brief does not contain Ms. Quaites' attorney's name, signature, address, telephone number, or Tennessee Board of Professional Responsibility number. However, we note that by order of October 12, 2010, the chancellor specifically allowed the filing of this brief, making no mention of these particular deficiencies.

[10] It it well settled that the sixty day time limit to seek review of an administrative decision is jurisdictional. *See Blair v. Tenn. Bd. of Probation & Parole*, 246 S.W.3d 38, 40 (Tenn. Ct. App. 2007). In addition, Rule 11.01 "makes the signing of a pleading by an attorney of record or the party an essential condition to validity of pleading." ***Old Hickory Engineering and Mach. Co., Inc. v. Henry***, 937 S.W.2d 782, 785 (Tenn. 1996). Therefore, "the status of the complaint on the date it was filed was as though it contained no signature, and, because of that deficiency, it was subject to being stricken from the record." *Id.* at 786.

This situation is analogous to the situation where an inmate fails to verify his or her complaint in compliance with Tennessee Code Annotated Section 27-8-106, requiring that the petition be made on an oath to a judge that it is the first such filing. This Court has held that when the original petition was not properly verified, any later amendment after the sixty day jurisdictional time limit will not relate back to the original non-compliant filing. ***Schaffer v. State, Bd. of Probation and Parole***, No. M2010-01805-COA-R3CV, 2011 WL 2120169, at *3 (Tenn. Ct. App. May 27, 2011). Consequently, a petition which is amended to comply with procedural rules after the expiration of sixty day time limit may not provide the chancery court jurisdiction over the case. *Id.*

(1) A table of contents, with references to the pages in the brief;

(2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;

(3) A jurisdictional statement in cases appealed to the Supreme Court directly from the trial court indicating briefly the jurisdictional grounds for the appeal to the Supreme Court;

(4) A statement of the issues presented for review;

(5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;

(6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;

(7) An argument, which may be preceded by a summary of argument, setting forth:

> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
>
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);

(8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27. Rule 6 of the Tennessee Rules of the Court of Appeals describes further requirements for the content of the argument "in regard to each issue on appeal." Rule 6 states:

> (a) Written argument in regard to each issue on appeal shall contain:
>
> (1) A statement by the appellant of the alleged erroneous action of the trial court which raises the issue and a statement by the appellee of any action of the trial court which is relied upon to correct the alleged error, with citation to the record where the erroneous or corrective action is recorded.
>
> (2) A statement showing how such alleged error was seasonably called to the attention of the trial judge with citation to that part of the record where appellant's challenge of the alleged error is recorded.
>
> (3) A statement reciting wherein appellant was prejudiced by such alleged

error, with citations to the record showing where the resultant prejudice is recorded.

(4) A statement of each determinative fact relied upon with citation to the record where evidence of each such fact may be found.

(b) No complaint of or reliance upon action by the trial court will be considered on appeal unless the argument contains a specific reference to the page or pages of the record where such action is recorded. No assertion of fact will be considered on appeal unless the argument contains a reference to the page or pages of the record where evidence of such fact is recorded.

Tenn. R. Ct. App. 6.

Despite the express demands of Rule 27 and Rule 6, Ms. Quaites' appellate brief has numerous blatant deficiencies. These deficiencies include the absence of (1) a statement of the issues presented for review,[11] (2) a statement of the case, (3) a statement of the facts, or (5) references to the appellate record.[12]

Deficiencies such as these were recently considered by this Court in *Owen v. Long Tire, L.L.C.*, No. W2011-01227-COA-R3-CV, 2011 WL 6777014 (Tenn. Ct. App. Dec. 22, 2011). In that case, this Court stated:

---

[11] Ms. Quaites' table of contents does refer to a statement of the issues being included in the brief; however no statement of the issues is actually provided in Ms. Quaites' brief. During oral argument this Court asked Ms. Quaites' counsel specifically about his failure to raise as an issue the chancery court's lack of subject matter jurisdiction. Counsel for Ms. Quaites admitted that the issue had not been raised in the initial brief, but asserted that it had been raised in Ms. Quaites' reply brief. As this Court explained during oral argument and we reiterate now, "we will not consider an issue raised for the first time in a reply brief as properly raised on appeal." *State, ex rel. Cottingham v. Cottingham*, No. M2008-02381-COA-R3-CV, 2010 WL 2943283, at *3 (Tenn. Ct. App. July 27, 2010) (citing *Castle v. State, Dep't of Corr.*, No. E2005-00874-COA-R3-CV, 2005 WL 2372762, at *4 (Tenn. Ct. App. Sept. 27, 2005)).

[12] The only reference in the argument section of the brief is to Ms. Quaites' trial brief. However, trial briefs are not evidence properly considered by this Court. In fact, Tennessee Rule of Appellate Procedure 24(a) specifically excludes trial briefs from the appellate record. Tenn. R. App. P. 24(a) ("The following papers filed in the trial court are excluded from the record: . . . trial briefs; . . . ."). This Court in *Aclin v. Speight*, 611 S.W.2d 54 (Tenn. Ct. App. 1981) stated unequivocally that trial briefs and memoranda of authority of counsel have no place in the appellate record. *Id.* at 56; *see also Atkins v. Kirkpatrick*, 823 S.W.2d 547, 548 (Tenn. Ct. App. 1991) ("As for trial briefs, there was no justification for either requesting or including these items in the record."). In addition, the Advisory Commission's comments state: "Trial briefs are superfluous in view of appellate briefs, and they should not be sent to the appellate court absent unusual circumstances." Tenn. R. App. P. 24(a), advisory comm'n note (1988). As such, Ms. Quaites' appellate brief contains no citations to any evidence that may be properly considered by this Court.

The most glaring deficiency in the [Appellant's] appellate brief is the complete omission of any statement of issues presented for review. The requirement of a statement of the issues raised on appeal is no mere technicality. First, of course, the appellee is entitled to fair notice of the appellate issues so as to prepare his or her response. Most important, this Court is not charged with the responsibility of scouring the appellate record for any reversible error the trial court may have committed. On appeal, "[r]eview generally will extend only to those issues presented for review." Tenn. R. App. P. 13.

*Id.* at *4.

In addition Ms. Quaites failed to make any citation to the appellate record in her brief. As we previously stated in *Long*, "[t]his Court is under no duty to verify unsupported allegations in a party's brief, or for that matter consider issues raised but not argued in their brief." *Id.* (quoting *Bean v. Bean*, 40 S.W.3d 52, 56 (Tenn. Ct. App. 2009)); *see Mabry v. Mabry*, No. 03A01–9106CH207, 1992 WL 24995, at *1 (Tenn. Ct. App. Feb. 14, 1992) ("It is not incumbent upon this Court to sift through the record in order to find proof to substantiate the factual allegations of the parties."). The Tennessee Supreme Court has noted that "[c]ourts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean*, 40 S.W.3d at 55 (citing cases).

We find it especially disconcerting that Ms. Quaites' brief has such serious technical deficiencies, given that one issue purported to be raised on appeal concerns a previous technical mistake made by Ms. Quaites' counsel, which the chancellor held completely deprived her of jurisdiction to review Ms. Quaites' administrative dismissal. This Court has previously held that "profound deficiencies [like those found in Ms. Quaites' appellate brief] render[] appellate review impracticable, if not impossible." *Long*, 2011 WL 6777014, at *4 (citing *Missionary Ridge Baptist Church v. Tidwell*, 1990 WL 94707, *2 (Tenn. Ct. App. July 11, 1990) (refusing to rely on the brief of the appellant because it did not contain references to the record either in the statement of facts or the argument section of its brief)); *see also Bean*, 40 S.W.3d at 55 (noting that the "failure to comply with the Rules of Appellate Procedure and the rules of this Court waives the issues for review").

While we recognize that this Court has discretion under Tennessee Rule of Appellate Procedure 2[13] to waive the express briefing requirements for good cause, we decline to

---

[13] Rule 2 of the  Tennessee Rule of Appellate Procedure provides, in relevant part:

(continued...)

exercise our discretion in this case. "[T]he Supreme Court has held that it will not find this Court in error for not considering a case on its merits where the plaintiff did not comply with the rules of this Court." **Bean**, 40 S.W.3d at 54–55 (citing **Crowe v. Birmingham & N.W. Ry. Co.**, 156 Tenn. 349, 1 S.W.2d 781 (Tenn. 1928)). Given Ms. Quaites' failure to comply with Rule 27 of the Tennessee Rules of Appellate Procedure and Rule 6 of the Tennessee Rules of the Court of Appeals, we decline to address the merits of this appeal. *See* **Bean**, 40 S.W.3d at 55; **Duchow v. Whalen**, 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993).

## III. Conclusion

For the foregoing reasons, all issues in Ms. Quaites' brief are waived. Accordingly, this appeal is dismissed. Costs of this appeal are taxed to Plaintiff/Appellant Toymeka Quaites, and her surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[13](...continued)
For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provisions of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion.